**IN THE UNITED STATES DISTRICT COURT FOR THE**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | | |
|---|---|---|
| DEWAYNE HILL, | ) | |
| *Plaintiff,* | ) | |
| v. | ) | No. 1:23-cv-695 (PTG/JFA) |
| MR. TATUM, *et al.*, | ) | |
| *Defendants.* | ) | |

**MEMORANDUM OPINION**

In this action filed under 42 U.S.C. § 1983, Plaintiff Dewayne Hill ("Mr. Hill"), proceeding *pro se*, alleges that officials at Lawrenceville Correctional Center ("LCC") violated his rights under the First and Fourteenth Amendments. *See* Dkt. 1. According to the Complaint, Plaintiff's rights were violated by failing to permit him to observe, in the manner of his choosing, the weekly Muslim prayer known as Jumuah. *See id.* The matter is now before the Court upon a Motion for Summary Judgment (Dkt. 19) filed by Defendant Timothy Puryear, who was the Assistant Facility Administrator at LCC when Mr. Hill's claims arose. After both Defendant and the Court provided Mr. Hill the notice required pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (*see* Dkts. 21, 23), Mr. Hill submitted what he has styled as a "Motion Opposing to the Defendant's Puryear's Motion for Summary Judgment." Dkt. 24 ("Motion in Opposition"). Mr. Puryear has not filed a reply in support of his Motion for Summary Judgment, and the time to do so has now passed. Accordingly, the Court proceeds to address both the Motion for Summary Judgment and Motion in Opposition now before it. For the reasons that follow, Defendant's Motion for Summary Judgment will be granted. Mr. Hill's Motion in Opposition will be denied.

## I. Background

### A. Procedural History

#### 1. The Complaint

On May 24, 2023, Mr. Hill filed his Complaint alleging that officials at LCC failed to ensure he was able to participate in weekly Jumuah sessions with LCC's other Sunni Muslim inmates. *See generally* Dkt. 1. The prison, he explained, is separated into two sections, which he calls the "southside" and "northside." *Id.* at 6. Before the COVID-19 pandemic, "all the Sunni Muslims, from the southside and the northside, would meet in [LCC's] gym each Friday for Jumuah service, which allowed all Sunni Muslims to abide by the Sharia laws of Islam by coming together for congregational prayer every single Friday." *Id.* at 6–7. After pandemic restrictions were lifted, "things were [allegedly] supposed to return to normal," but they did not. *Id.* at 6. Instead, according to the Complaint, Mr. Puryear "implemented major restrictions" such that the Sunni Muslims in the southside and those in the northside were forced to observe Jumuah on alternate weeks so that inmates from each section of the prison would not interact. *Id.* at 6–8. Mr. Hill claims that, despite the alleged ban on contact between the southside and northside Sunni Muslims, inmates that were part of a "gaming program" were allowed to congregate, regardless of which section of the prison to which they were assigned. *Id.* at 7. Mr. Hill named Facility Administrator Tatum, Assistant Facility Administrator Puryear, and G.E.O. Corp. as defendants, from whom he seeks declaratory, injunctive, and monetary relief. *See* Dkt 1 at 2–3, 10–11. Consistent with his allegations, Mr. Hill raises two claims:

Claim One — LCC officials violated Mr. Hill's First Amendment to freely exercise his religious beliefs by failing to permit him to observe Jumuah with every other Sunni Muslim at the facility on a weekly basis. *See* Dkt. 1 at 5–10.

Claim Two — LCC officials violated Mr. Hill's Fourteenth Amendment right to equal protection by permitting inmates from different sections of the facility who

> were part of a "gaming program" to congregate while failing to permit Sunni Muslims from every part of the facility to congregate for Jumuah. *See id.*

### 2. Screening, Service, and the Motion for Summary Judgment

On February 2, 2024, the Court conducted the screening required by 28 U.S.C. § 1915A and found that the Complaint failed to state a claim against every defendant except for Mr. Puryear. *See* Dkt. 6. In the same Order, the Court directed the United States Marshals Service ("USMS") to attempt to serve Mr. Puryear at the address Mr. Hill had provided. *Id.* at 3–4. The USMS successfully served Mr. Puryear on March 15, 2024, meaning Mr. Puryear's deadline to answer, move against, or otherwise oppose the Complaint fell on April 5, 2024. *See* Dkt. 9.

On June 3, 2025, after Mr. Puryear failed to respond to the Complaint, the Court directed LCC Director Mike Seville and the Attorney General of Virginia to "provid[e] [it] with any information they possess[ed] regarding service and possible representation of Defendant Mr. Puryear." Dkt. 10 at 1–2. On July 3, 2025, counsel appeared on Mr. Puryear's behalf. Dkts. 13, 14. On July 29, 2025, Mr. Puryear filed his Answer after requesting and being granted an extension of time to do so. Dkt. 16. The Court directed Mr. Puryear to either file, or expressly decline to file, a motion for summary judgment. Dkt. 18. On October 14, 2025, Mr. Puryear filed his Motion for Summary Judgment. Dkt. 19. Mr. Hill's Motion in Opposition followed. Dkt. 24.

## B. Statement of Undisputed Facts

At all times relevant to this action, Mr. Hill was in the custody of the Virginia Department of Corrections ("VDOC") and housed at LCC, where Mr. Puryear served as the Assistant Facility Administrator. Dkt. 20-1 ¶¶ 2, 5. As part of his responsibilities, Mr. Puryear would review the "monthly religious schedule/calendar" that the institutional chaplain would prepare. *Id.* ¶ 7. Due to "suspected overdoses and other security incidents" at LCC, the institution's Facility

Administrator sought "to limit . . . movement" between the facility's "north and south cluster[s]." *Id.* ¶ 10. This effort was reflected in the chaplain's monthly calendar, which set forth "an alternating schedule for religious services, including Jumuah service." *Id.* ¶ 12 (footnote omitted). Specifically, "[o]n one Friday, prisoners from the north cluster could attend religious services in the gym, including Jumuah service; and on the next Friday, prisoners from the south cluster could attend religious services in the gym, including Jumuah." *Id.* Muslim inmates whose cluster was not given gym access in a particular week retained the right to "pray in their cells or congregate with other prisoners to pray together in the pod's dayroom." *Id.* ¶ 13.

During the period relevant to this action, LCC also operated what was called the "Gaming 4 Success Program." *Id.* ¶ 14. This program "consisted of 10-15 prisoners identified by the [prison's] Intelligence Department as prisoners that could become security risks." *Id.* ¶ 15. The prisoners who participated in this program were "from both the north and south cluster" and would "work[ ] closely with" LCC staff on "skills to cope with prison life." *Id.* ¶¶ 16–18.

## II. Standard of Review

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018) (alteration in original) (quoting *Jacobs v. Admin. Off. of the Cts.*, 780 F.3d 562, 568 (4th Cir. 2015)). Once the moving party files a motion for summary judgment, the nonmoving party must "show that there is a genuine issue of material fact for trial . . . by offering 'sufficient proof in the form of admissible evidence[.]'" *Id.* (alteration in original) (quoting *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d

208, 216 (4th Cir. 2016)). In evaluating a motion for summary judgment, a district court must consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences from the facts in favor of that party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

## III. Analysis

### A. Claim One - Free Exercise of Religion

In Claim One, Mr. Hill asserts that LCC officials, including Mr. Puryear, violated his First Amendment[1] right to freely exercise his religious beliefs by failing to permit him to observe Jumuah with every other Sunni Muslim at the facility on a weekly basis. *See* Dkt. 1 at 5–10. Mr. Puryear asserts that the undisputed factual record before the Court forecloses any such claim. The Court agrees.

To prove a free exercise claim under the First Amendment, a plaintiff must demonstrate "(1) that he holds a sincere belief that is religious in nature" and (2) that Defendants imposed a substantial burden on the practice of his religion. *Whitehouse v. Johnson*, No. 1:10cv1175 (CMH/JFA), 2011 WL 5843622, at *4 (E.D. Va. Nov. 18, 2011) (citing *Hernandez v. Comm'r*, 490 U.S. 680, 699 (1989)). "Government officials impose a substantial burden on the free exercise of religion by 'put[ting] substantial pressure on an adherent to modify his behavior and to violate his beliefs.'" *Massenburg v. Adams*, No. 3:08cv106, 2011 WL 1740150, at *4 (E.D. Va. May 5, 2011) (quoting *Lovelace v. Lee*, 472 F.3d 174, 187 (4th Cir. 2006)) (alteration in original) (internal

---

[1] While addressing Mr. Hill's First Amendment religious liberty claim, the Court observes that Mr. Hill does *not* raise any corresponding claim under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), *see* 42 U.S.C. § 2000cc *et seq*. Even if he had, though, he would not be entitled to relief. Indeed, a plaintiff can obtain injunctive relief only under RLUIPA. *See Wall*, 741 F.3d at 496 n.5. Additionally, Mr. Hill's transfer away from LCC to a different VDOC facility has mooted any such claim. *See Rendelman v. Rouse*, 569 F.3d 182, 186–87 (4th Cir. 2009).

quotation marks omitted). They do not do so merely by making one's ability to exercise their religion more inconvenient. *See Dorman v. Aronofsky*, 36 F.4th 1306, 1314 (11th Cir. 2022) ("[A] substantial burden is more than an inconvenience and is akin to significant pressure which directly coerces the religious adherent to conform his or her behavior accordingly." (internal quotation marks, alteration, and citation omitted)); *Stephens v. Byrd*, 2019 WL 4345378, at *6 (W.D. Va. Sept. 12, 2019) ("Mere inconvenience and minor expense cannot constitute a substantial burden for purposes of a First Amendment claim." (citation omitted)).

Once a plaintiff makes the threshold showing of a sincere religious belief and the imposition of a substantial burden, he must show that "the practice or regulation [he challenges] is not 'reasonably related to legitimate penological interests.'" *Firewalker-Fields v. Lee*, 58 F.4th 104, 114 (4th Cir. 2023) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Courts apply a four-factor test (the "*Turner* Test") when assessing the reasonableness of a prison rule or regulation:

> (1) whether there is a valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it;
>
> (2) whether there are alternative means of exercising the right that remain open to prison inmates;
>
> (3) the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally; and
>
> (4) whether there are ready alternatives.

*Greenhill v. Clarke*, 944 F.3d 243, 253 (cleaned up) (quoting *Turner*, 482 U.S. at 89–91).

Mr. Puryear moves for summary judgment on this claim arguing that the policy was "related to a valid penological interest" and therefore permissible, regardless of whether the policy was a substantial burden. *See* Dkt. 20 at 7 (citing *Turner*, 482 U.S. at 79–90).

As to the first *Turner* factor, Mr. Puryear asserts that "[l]imiting cluster movement could limit the movement of contraband" within LCC, thereby hopefully reducing the chance of further

overdose deaths within the prison. Dkt. 20 at 7–8. Other courts have found that there is a legitimate connection between similar restrictions and the reduction of contraband within prisons. *See, e.g.*, *Martinez v. Schultz*, No. 3:19-CV-146 DRL-MGG, 2021 WL 3145208, at *4 (N.D. Ind. July 26, 2021) (finding a connection between "limitations on religious attendance" and "the prison's attempts to curb drug use and drug trafficking"); *Haynes v. Hedgpeth*, No. 12-cv-00363 JST (PR), 2015 WL 1138411, at *7 (N.D. Cal. Mar. 12, 2015) ("The elimination of group worship services for affected inmates limited the security risks associated with inmates gathering in a group, including inmate violence, contraband bartering, communication of gang orders, and passing of weapons."). Mr. Hill appears to question the legitimacy of the connection. Dkt. 24 at 6. The Court, however, declines to substitute itself as a policymaker for the VDOC. Indeed, the first *Turner* factor calls for "deferen[ce] to the prison's rationale" and asks courts "to see if the policies reasonably relate to some legitimate goal, not whether [a court] would make the policy choices differently." *Firewalker-Fields*, 58 F.4th at 116. Here, there is a rational connection between the policy and offered governmental interest justifying it. Therefore, the first *Turner* factor resolves in Mr. Puryear's favor.

The second *Turner* factor asks whether alternative means of exercising the affected right remained open. *Turner*, 482 U.S. at 90. Here, it is undisputed that Mr. Hill and other inmates in his pod retained the ability to engage in Jumuah prayer, either individually or collectively with other Muslims in the pod, regardless of whether they had access to the gym in a particular week. *See* Dkt. 20-1 ¶ 13. That Mr. Hill was unable to observe Jumuah in the exact manner he wished—with every other Sunni Muslim inmate housed at LCC, as opposed to just those housed in his particular pod—does not render the restriction constitutionally unreasonable. Indeed, as the Fourth Circuit has observed, the relevant question is not "whether [the inmate] had the opportunity to

engage in Friday Prayer on his terms, but rather whether he could generally engage in worship." *Firewalker-Fields*, 58 F.4th at 117. Therefore, the second *Turner* factor also resolves in Mr. Puryear's favor.

The third *Turner* factor requires the Court to consider "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally." *Turner*, 482 U.S. at 90. Where there will be a "significant 'ripple effect'" from a potential accommodation, "courts should be particularly deferential." *Id.* As to this factor, Mr. Puryear asserts that "[l]imiting the cross-cluster activities serves as a cost and labor efficient way of preventing the movement of contraband, could prevent injuries, and could potentially reveal sources of the contraband." Dkt. 20 at 8–9. The Court accepts as true Mr. Puryear's logical argument that more prisoner movement would require more supervision from correctional officers. Recognizing, however, that the record is limited with respect to the actual, tangible impact a difference in policy would have made, the Court finds that this factor does not weigh strongly in its analysis of Claim One. *See Wall v. Wade*, 741 F.3d 492, 501 (4th Cir. 2014) ("[T]he record is void of any specific information regarding the[] purported costs [of a less restrictive policy], and we are not content to permit a prison to deny an inmate's constitutional right in the face of such generalized concerns.").

Finally, the fourth *Turner* factor requires this Court to consider whether there are ready alternatives to the policy in question. *Turner*, 482 U.S. at 90. Importantly, though, it is not a prison official's burden to dream up those alternative policies; it is the plaintiff's. *See Lane v. Griffin*, 834 F.2d 403, 407 n.5 (4th Cir. 1987) ("It is improper to place the burden on a prison official to show that no reasonable method exists by which religious rights can be accommodated without creating bona fide security problems."). Here, although Mr. Hill has questioned the connection

between the policy limiting interactions between southside and northside inmates and the security concerns LCC identified, he has not identified any alternative to that policy. Consequently, the fourth *Turner* factor resolves in Mr. Puryear's favor.

Consistent with the above, the *Turner* factors overwhelmingly resolve in Mr. Puryear's favor, and the Court will therefore grant the Motion for Summary Judgment as to Claim One.[2]

**B. <u>Claim Two – Equal Protection</u>**

In Claim Two, Mr. Hill asserts that LCC officials, including Mr. Puryear, violated his Fourteenth Amendment right to equal protection by permitting inmates from different sections of the facility who were part of a "gaming program" to congregate despite enforcing a policy that had the effect of prohibiting Sunni Muslims from the southside and northside of LCC to congregate for Jumuah. *See* Dkt. 1 at 5–10. Mr. Puryear asserts that the undisputed factual record before the Court forecloses any such claim. The Court agrees.

The Fourteenth Amendment provides that "[n]o state shall . . . deny any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. "To succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination." *Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001). But in the prison setting, even where government officials offer disparate treatment to similarly situated individuals, that disparate treatment "passes muster so long as [it] is 'reasonably related to [any]

---

[2] The Court also finds that the Complaint fails to allege the existence of any substantial burden on Mr. Hill's ability to exercise his beliefs. *See, e.g.*, *Thomas v. Safir*, No. C 06-0184 MMC (PR), 2007 WL 9724372, at *7 (N.D. Cal. Sept. 28, 2007) (finding no substantial burden where "plaintiff retained his ability to perform his prayers, to attend Jumu'ah services when they were available to him, and to engage in other religious educational and counseling activities"); 28 U.S.C. § 1915(e)(2)(B)(ii) ("[T]he court shall dismiss the case *at any time* if [it] determines that . . . the action or appeal . . . fails to state a claim on which relief may be granted.") (emphasis added).

legitimate penological interests.'" *Veney v. Wyche*, 293 F.3d 726, 732 (4th Cir. 2002) (alteration in original) (quoting *Shaw v. Murphy*, 532 U.S. 223, 225 (2001)).

Here, there is no dispute that Mr. Hill and other Sunni Muslims were treated differently than the participants of the Gaming 4 Success program. Specifically, the record demonstrates that Sunni Muslims at LCC were not allowed to comingle with inmates of their religion housed in another pod while Gaming-4-Success participants congregated regardless of their pod assignment. *See* Dkt. 20-1 ¶¶ 15–16. But Sunni Muslims and the LCC's Gaming 4 Success program are not similarly situated. One is a religious sect, and the other is a rehabilitative program with no ties to any religion or creed. In essence, Mr. Hill compares apples to oranges. This comparison cannot support an equal protection claim. *See, e.g.*, *Thomas v. Haley*, No. CA 99-0693-RV-C, 2000 WL 362043, at *6 (S.D. Ala. Mar. 17, 2000) (finding that a plaintiff was "comparing apples to oranges" in claiming that he was improperly denied access to a law library while other inmates were permitted to visit churches). Even if it were not so, LCC's policy limiting congregations of larger groups was reasonably related to legitimate penological concerns and those same concerns did not apply to the Gaming 4 Success group, which was smaller and therefore permitted LCC staff to "work[] closely" with it. Dkt. 20-1 ¶ 18; *see* § III.A, *supra*.

For these reasons, the Court will grant the Motion for Summary Judgment as to Claim Two.

## IV. Conclusion

For the foregoing reasons, Mr. Puryear's Motion for Summary Judgment will be GRANTED. The Court will enter judgment in Defendants' favor, and this action will be dismissed with prejudice.

Entered this 23nd day of September, 2026.
Alexandria, Virginia

/s/
Patricia Tolliver Giles
United States District Judge